UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DANIEL J. R.,

                          Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

                          Defendant.

CASE NO. 3:18-CV-05239-DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's application for disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 3.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred when he failed to properly consider Plaintiff's subjective symptom testimony and the lay witness testimony. Had the ALJ properly considered this evidence, the residual functional capacity ("RFC") may have included additional limitations. The ALJ's error is therefore not

1 harmless, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. §

2 405(g) to the Commissioner of Social Security for further proceedings consistent with this Order.

3 <u>FACTUAL AND PROCEDURAL HISTORY</u>

4 On September 2, 2016, Plaintiff filed an application for DIB, alleging disability as of July

5 10, 2015.[1] *See* Dkt. 6, Administrative Record ("AR") 13. The application was denied upon initial

6 administrative review and on reconsideration. *See* AR 13. ALJ John Michaelsen held a hearing in

7 this matter on September 5, 2017. AR 31-67. In a decision dated September 26, 2017, the ALJ

8 determined Plaintiff to be not disabled. AR 10-30. The Appeals Council denied Plaintiff's

9 request for review of the ALJ's decision, making the ALJ's decision the final decision of the

10 Commissioner. *See* AR 1-6; 20 C.F.R. §§ 404.981, 416.1481.

11 In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by: (1) failing to fully and

12 fairly develop the record; (2) not finding Plaintiff's sleep apnea and panic disorder were severe

13 impairments at Step Two; (3) improperly considering the medical opinion evidence of record; (4)

14 failing to provide specific, clear and convincing reasons to discount Plaintiff's subjective

15 symptom testimony; and (5) not providing germane reasons to reject lay testimony from

16 Plaintiff's wife. Dkt. 8, pp. 3-19.

17 <u>STANDARD OF REVIEW</u>

18 Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

19 social security benefits if the ALJ's findings are based on legal error or not supported by

20 substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

21 Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

22 _____

23 [1] Plaintiff previously filed two other DIB applications. *See* AR 13. Neither party raises issues related to
those prior applications in the present case. *See* Dkts. 8, 11, 12.

24

DISCUSSION

**I.      Whether the ALJ failed to fully and fairly develop the record.**

3          Plaintiff first asserts the ALJ failed to fully and fairly develop the record by not ordering

4    a physical or mental consultative examination of Plaintiff. Dkt. 8, p. 3.

5          "An ALJ's duty to develop the record further is triggered only when there is ambiguous

6    evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*

7    *v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Where the record, taken as a whole, is

8    adequate to evaluate a claimant's alleged impairment, the ALJ's duty to develop the record is not

9    implicated. *See id.*; *see also Baghoomian v. Astrue*, 319 Fed. Appx. 563, 566 (9th Cir.

10   2009). One of the means available to an ALJ to supplement an inadequate medical record is to

11   order a consultative examination, *i.e.*, "a physical or mental examination or test purchased for [a

12   claimant] at [the Social Security Administration's ("SSA's")] request and expense." *Reed v.*

13   *Massanari*, 270 F.3d 838, 841 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1519, 416.919). Within

14   this framework, "the Commissioner 'has broad latitude in ordering a consultative examination.'"

15   *Id.* (quoting *Diaz v. Sec'y of Health and Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990)).

16          In this case, Plaintiff asserts, in a general matter, the ALJ failed to fully and fairly

17   develop the record because there was no evaluation in the record "clearly describing [Plaintiff's]

18   functional limitations." Dkt. 8, p. 3. But Plaintiff fails to offer any particularized argument

19   regarding how the evidence in the record was ambiguous or inadequate such that it triggered the

20   ALJ's duty to develop the record. *See id.*

21          Given the lack of specificity in Plaintiff's argument, Plaintiff failed to demonstrate any

22   harmful error on this issue. *See Bailey v. Colvin*, 669 Fed. Appx. 839, 840 (9th Cir. 2016)

23   (citing *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012)) (finding no error where the

24

claimant did not "demonstrate prejudice from any errors"). The Court therefore rejects Plaintiff's conclusory argument. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692, n. 2 (9th Cir. 2009) (rejecting "any invitation" to find error where the claimant failed to explain how the ALJ harmfully erred); *Yi v. Berryhill*, 2017 WL 2634211, at *6 (W.D. Wash. June 19, 2017) (finding plaintiff failed to show the ALJ should have ordered a consultative examination where plaintiff did not demonstrate the record was ambiguous or inadequate); *Dale v. Colvin*, 2015 WL 5254221, at *5 (W.D. Wash. Aug. 19, 2015) (holding "evidence of mental health impairments . . . may have been sparse, but neither ambiguous nor inadequate. Accordingly, the duty to 'conduct an appropriate inquiry' was not necessarily triggered. Additionally, as even [the claimant] cannot characterize what impairments the ALJ would have found had she developed the record, there is no reason to expect the ALJ could have.").

**II.     Whether the ALJ properly considered all of Plaintiff's impairments at Step Two of the sequential evaluation process.**

Next, Plaintiff contends the ALJ erred by failing to find his sleep apnea and panic disorder were severe impairments at Step Two of the sequential evaluation process. Dkt. 8, pp. 5-6.

Step Two of the Administration's evaluation process requires the ALJ to determine whether the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. §§ 404.1522, 416.922 (2017). "Basic work activities are 'abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling.'" *Smolen*, 80 F.3d at 1290 (quoting 20 C.F.R. § 140.1521(b)).

Regarding mental impairments, the ALJ considers four broad functional areas. *See* 20

C.F.R. § 404.1520a (2017). If the ALJ rates the degree of a claimant's limitation as "none" or

"mild", the ALJ will generally conclude that the claimant's impairment(s) is not severe, "unless

the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's]

ability to do basic work activities." *Id.* at (d)(1). An impairment or combination of impairments

"can be found 'not severe' only if the evidence establishes a slight abnormality having 'no more

than a minimal effect on an individual[']s ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting

*Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting Social Security Ruling ("SSR")

85-28)).

At Step Two, the ALJ found Plaintiff had "the following severe impairments: depression,

anxiety/PTSD, and history of left ankle arthritis with flat feet[.]" AR 16. The ALJ discussed

Plaintiff's sleep apnea diagnosis and related medical history at Step Two, but determined it was a

non-severe impairment because it did not "result in more than mild functional limitations[.]" AR

16. Further, although the ALJ did not mention Plaintiff's panic disorder at Step Two, he

discussed Plaintiff's panic attacks throughout his summary of the medical evidence. *See* AR 19-

21. Regarding Plaintiff's mental health in general, the ALJ determined the RFC assessment "for

a low stress work environment with simple, routine tasks is consistent" with the mental status

examination findings and accounts for Plaintiff's symptoms. AR 21.

To support his assertion that the ALJ erred by failing to find his sleep apnea was a severe

impairment, Plaintiff points to evidence in the record showing a diagnosis of "obstructive sleep

apnea" and related hearing testimony about his impaired sleep. Dkt. 8, p. 5 (citing AR 41-43,

528). Plaintiff fails, however, to point to any evidence in the record showing his sleep apnea

significantly limits his ability to conduct basic work activities. [2] *See id.*; *see also* 20 C.F.R. §§

404.1522, 416.922 (an impairment is "not severe if it does not significant limit your physical . . .

ability to do basic work activities," such as "walking, standing, [or] standing"). To the contrary,

evidence in the record indicates Plaintiff's sleep apnea had – as the ALJ found – little to no

impact on his ability to conduct basic work activities. *See* AR 590 (physician opining the only

impact Plaintiff's sleep apnea had on his "ability to work" was that "[h]e should not drive or

operate heavy machinery when sleepy"),[3] AR 576 (physician opining Plaintiff's sleep apnea had

no functional impact on his ability to work).

     In light of Plaintiff's lack of explanation, as well as the contradictory evidence in the

record, Plaintiff failed to show the ALJ harmfully erred with respect to his sleep apnea. *See Allen*

*v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (citation omitted) ("If the evidence admits of more

than one rational interpretation," the Commissioner's decision must be upheld); *Ludwig*, 681

F.3d at 1054 ("The burden is on the party claiming error to demonstrate not only the error, but

also that it affected his substantial rights.'"); *see also Bustamante v. Massanari*, 262 F.3d 949,

953-54 (9th Cir. 2001) (the claimant bears the burden of proof at Step Two).

     Regarding panic disorder, Plaintiff argues the ALJ should have found Plaintiff's panic

disorder was a severe impairment due to medical evidence from Drs. Odessa D. Cole, Ph.D., and

Anette M. Matthews, M.D. Dkt. 8, pp. 5-6 (citing AR 383, 428, 642, 654-55). However, while

---

[2] Plaintiff argues the ALJ failed to account for Plaintiff's "need for afternoon naps" due to his sleep apnea. Dkt. 8, p. 5 (citing AR 649). Notably, the record Plaintiff cites for this proposition states Plaintiff was going to "try napping" with his CPAP machine in the afternoons. AR 649. The record does not state Plaintiff "needs" an afternoon nap. *See* AR 649. Hence, Plaintiff's argument is unsupported by the record.

[3] The Court notes that, even if the ALJ erred by failing to account for the limitation that Plaintiff "should not drive or operate heavy machinery," any error would be harmless, as none of the jobs the ALJ found Plaintiff could perform at Step Five require Plaintiff to drive or operate heavy machinery. *See* Dictionary of Occupational Titles ("DOT") 729.687-014, 1991 WL 679734 ("electrode cleaner"); DOT 590.685-062, 1991 WL 684588 ("cleaning machine tender, semiconductor wafers"); DOT 724.685-014, 1991 WL 679550 ("weld inspector").

these medical records document panic disorder diagnoses and mental health symptoms, Plaintiff

failed to explain how these records show he is more limited in his ability to conduct basic work

activities than what the ALJ accounted for in the RFC. *See id.* The Court's review of these

records also does not reveal such harmful error. *See* AR 383, 428, 642, 654-55. Hence, Plaintiff

failed to demonstrate the ALJ committed harmful error regarding panic disorder at Step Two.

*Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("The claimant first must bear the burden at . . .

step two that he has a medically severe impairment or combination of impairments[.]"); *see also*

*Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (holding the ALJ

did not err by not classifying an impairment as severe at Step Two because "the medical record

does not establish any work-related limitations as a result of this impairment").

### III. Whether the ALJ properly considered the medical opinion evidence.

Plaintiff additionally argues the ALJ failed to properly evaluate all of the medical

evidence. Dkt. 8, pp. 3-7.

In assessing an acceptable medical source, an ALJ must provide "clear and convincing"

reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester*

*v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.

1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining

physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons

that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*

*v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.

1983)).

"Other medical source" testimony, which the Ninth Circuit treats as lay witness testimony,

"is competent evidence an ALJ must take into account," unless the ALJ "expressly determines to

disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*,

236 F.3d 503, 511 (9th Cir. 2001); *Turner*, 613 F.3d at 1224. In rejecting lay testimony, the ALJ

need not cite the specific record as long as "arguably germane reasons" for dismissing the

testimony are noted. *Lewis*, 236 F.3d at 512.

In this case, Plaintiff's Opening Brief provides a detailed summary of the medical

evidence contained in the record. *See* Dkt. 8, pp. 3-7. Plaintiff then argues the Court should find

the ALJ harmfully failed "to properly evaluate all of the medical evidence . . . as a reasonable

ALJ who properly evaluated" and credited this evidence "could have reached a different

disability determination." *Id.* at 7. Plaintiff again fails, however, to allege any particularized error

with respect to *how* the ALJ failed to properly assess the summarized evidence.[4] *See id.* at 3-7.

By failing to explain how the ALJ erred regarding these medical opinions, Plaintiff fails to show

the ALJ's alleged mistreatment of this evidence was consequential to the RFC and the ultimate

disability determination. Therefore, the Court declines to consider whether the ALJ properly

considered these medical opinions.[5] *See Carmickle*, 533 F.3d at 1161 n.2 (the court will not

consider an issue that a plaintiff fails to argue "with any specificity in his briefing").

---

[4] Although Plaintiff briefly mentions the Veterans Affairs ("VA") Rating Decision ("VA Rating") in the summary of the medical opinion evidence, Plaintiff does not challenge the weight the ALJ gave to the VA Rating. *See* Dkt. 8, p. 5. Thus, the Court does not assess whether the ALJ properly considered the VA Rating.

[5] Even if the Court were to consider the merits of Plaintiff's argument, a review of the evidence Plaintiff summarized does not reveal harmful error. *See Davis v. Berryhill*, 736 Fed. Appx. 662, 665 (9th Cir. 2018) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)) ("Though [the claimant] may disagree with the ALJ's interpretation of the record, the latter's interpretation is supported by substantial evidence, which precludes the Court from engaging in second-guessing.")

**IV.    Whether the ALJ provided specific, clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony.**

Plaintiff further contends the ALJ failed to properly evaluate Plaintiff's subjective symptom testimony. Dkt. 8, pp. 7-15.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (9th Cir. 1995) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.3d at 834 (citation omitted). While the SSA's regulations have eliminated references to the term "credibility," the Ninth Circuit has held its previous rulings on claimant's subjective complaints – which use the term "credibility" – are still applicable.[6] *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); 2016 WL 1237954 (Mar. 24, 2016); *see also Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (noting SSR 16-3p is consistent with existing Ninth Circuit precedent). Questions of credibility are solely within the ALJ's control. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580.

At the hearing, Plaintiff testified that he stopped working in July 2015 due to sleep apnea, worsening panic attacks, and because his "feet go so bad" that he could not walk longer than 30 minutes. AR 41. Plaintiff stated that, due to his sleep apnea, he may get "no sleep." AR 42. Plaintiff experiences a headache and "mental fog" for about two hours in the morning. AR 43.

---

[6] Because the applicable Ninth Circuit case law refers to the term "credibility," the Court uses the terms "credibility" and "subjective symptom testimony" interchangeably.

He likewise reported that he "lose[s] mental track" of conversations and cannot "keep up" with conversations lasting multiple hours. *See* AR 43.

Plaintiff made several statements at the hearing about his panic attacks. He reported that a panic attack may last for up to three hours. AR 42. Moreover, Plaintiff testified that "people talking for extended periods of time, traveling to places . . . [and] being outside the house" increase his stress levels and "can frequently trigger a panic attack." AR 53. If people talk too long, Plaintiff's "temper gets bad" and he cannot "calmly work through" the situation. *See* AR 53. Plaintiff stated his panic attacks are not well-controlled with medications. *See* AR 45-46.

Plaintiff testified that his daily activities depend on whether he is having a "good day" or "bad day." *See* AR 48-50. He spends a typical day "sit[ting] around the house." AR 48. If he is "having a good day," he will "try to get up and do a few chores." AR 48. On a good day, Plaintiff will also "try to play" with his youngest child" and "maybe watch a video or two on the computer." AR 49. Plaintiff similarly said he may attend church or a school function for his children "for maybe an hour" if he is having a "good day." *See* AR 47-48. On a "bad day," Plaintiff said he "stay[s] up in [his] room" because if "people talk to [him] too much, it just causes anxiety." AR 49. Plaintiff has a "good day" about twice a week, and a "bad day" twice a week, with the remaining days "somewhere in the middle." AR 49-50.

Furthermore, Plaintiff reported that he does not "have any hobbies anymore." AR 50. Although he used to do karate and fencing, he stopped engaging in these hobbies a year before the hearing because they became "stressors, not de-stressors." AR 50. Plaintiff stated he had been doing volunteer work tutoring children, but stopped three months prior to the hearing. AR 50-51. Plaintiff testified his wife drives him and takes care of the bills. AR 48.

With respect to his physical abilities, Plaintiff stated he can lift 30 pounds for about two to three hours per day. AR 54. He also reported he can stand and walk for three hours during the day. AR 54.

In a "Function Report - Adult," dated October 4, 2016, Plaintiff reported similar issues. AR 266-80. For example, he reported difficulty sleeping, a headache upon waking, irritability when engaging with others, and panic attacks lasting 1-2 hours. AR 266, 270. Plaintiff, as he did at the hearing, reported that his daily activities depend on whether he has a "good" or "bad" day. *See* AR 268, 272. Plaintiff reiterated that he no longer has hobbies and does not help with housework. AR 270, 272. Plaintiff sees friends "once or twice a month," and attends church "about every other service." AR 273. Moreover, Plaintiff wrote that he can walk for 30 minutes before needing to stop and rest, and can "pay attention" for 1 to 4 hours "depending on the day." AR 274. In his physical abilities, Plaintiff reported limitations in his ability to lift, squat, stand, reach, walk, sit, kneel, and climb stairs. AR 274.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 19. However, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" AR 19. Specifically, the ALJ discounted Plaintiff's subjective symptom testimony (1) in light of his daily activities, (2) because of statements he made indicating he believed he could work, and (3) due to the objective medical evidence. AR 19-23.

First, the ALJ found Plaintiff's activities "indicate greater functioning" than Plaintiff alleged. AR 22. The ALJ went on to state:

> For example, in September 2015, the claimant reported that he had "not found a
> better job since leaving his former job" and he did not qualify for unemployment

benefits. The claimant said that he taught some karate classes for one of his daughters, and that the activities helped relieve some stress. In October 2015, the claimant reported helping with the homeschooling of his daughters to keep busy. In April 2016, the claimant reported attending community meditation classes several times per week. In August 2016, he reported going to church and friends' houses regularly. These activities are not consistent with the claimant's allegations of anxiety so severe that it rendered him nearly homebound.

AR 22 (internal citations omitted).

There are two grounds under which an ALJ may use daily activities to form the basis of an adverse credibility determination: (1) whether the activities contradict the claimant's other testimony, and (2) whether the activities of daily living meet "the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). In this case, the ALJ referred to the first ground by claiming Plaintiff's activities were inconsistent with his allegations of anxiety. *See* AR 22. Nonetheless, the record does not support the ALJ's finding that Plaintiff's activities were inconsistent with his testimony. As an initial matter, the Court notes it is unclear how Plaintiff's statements that he had "not found a better job" and did not qualify for unemployment benefits undermine his allegations in relation to his daily activities. Thus, the ALJ's bare statement was not a clear and convincing reason to reject Plaintiff's testimony. *See Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to [his] conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

The ALJ's remaining statements regarding Plaintiff's activities are not supported by substantial evidence in the record. While the ALJ claimed Plaintiff's ability to teach karate classes undermined his allegations that he was "nearly homebound," this finding is contrary to Plaintiff's testimony, in which he stated he stopped teaching karate a year before the hearing because it increased his stress. *See* AR 22, 50. Additionally, although Plaintiff reported he

sometimes helps homeschool his daughters, the Court finds Plaintiff's ability to *home*school

his daughters not inconsistent with his allegations that he struggles to leave his *home*. *See* AR

22, 494.

Moreover, the ALJ found Plaintiff's report in April 2016 that he attended community

meditation classes "several times per week" inconsistent with his testimony that he was "nearly

homebound." *See* AR 22, 438. Yet Plaintiff did not, as the ALJ claimed, classify himself as

"nearly homebound"; rather, Plaintiff reported he has "good days" and "bad days," and is able

to leave the house on a good day. *See* AR 47-48. The Ninth Circuit has "emphasized while

discussing mental health issues, it is error to reject a claimant's testimony merely because

symptoms wax and wane in the course of treatment." *Garrison v. Colvin*, 759 F.3d 995, 1017

(9th Cir. 2014). Given the context of Plaintiff's testimony and relevant case law, Plaintiff's

purported ability to attend meditation classes is not necessarily inconsistent with his testimony.

The Court also notes the record is unclear as to whether Plaintiff actually attended

meditation classes "several" times per week. The record the ALJ cited indicates Plaintiff

reported to a treatment provider on April 6, 2016 that he had "started" attending community

meditation classes. *See* AR 438. But thereafter, on April 28, 2018, Plaintiff reported to another

treatment provider that he "*plans* to attend a weekly meditation group." AR 383 (emphasis

added). Subsequent mental health treatment records do not indicate whether Plaintiff attended

the meditation classes. *See* AR 384-97.[7] Hence, on this record, it is unclear whether Plaintiff

actually attended meditation classes "several" times per week. The Court therefore finds this

---

[7] Although Plaintiff periodically attended "group therapy" sessions with other veterans, the record indicates he attended "post-deployment" group therapy, "PTSD symptom management skills" group therapy, and a "CPAP skills" group. *See* AR 398-408, 414-19, 423-28. As such, the record indicates these group sessions are distinct from the "community meditation classes" the ALJ purported Plaintiff attended.

conclusion from the ALJ – based on a single record that conflicts with subsequent records – not supported by substantial evidence in the record.

Lastly, even though Plaintiff reported going to church and friends' houses, he did not report doing so "regularly," as the ALJ claimed. Rather, the report the ALJ cited indicates Plaintiff reported seeing his friends "once or twice a month," and attending "about every other" church service. AR 273. This report is again not inconsistent with Plaintiff's testimony about his ability to leave the house on a "good" day. AR 47-48. In all, the ALJ's finding that Plaintiff's activities were inconsistent with his testimony is not clear and convincing nor supported by substantial evidence.

Second, the ALJ rejected Plaintiff's subjective symptom testimony because Plaintiff "made numerous statements that indicate he believed he was able to work." AR 22-23. The ALJ wrote:

> For example, in November 2015, the claimant reported that he was gradually looking at moving back into the workforce if he could find something low stress, which is consistent with the residual functional capacity assessment set forth above. In July 2016, the claimant met with a vocational rehabilitation specialist at the VA who noted his report that he wanted a job with computers and retraining. The claimant reported that he was not interested in looking for work because of his panic attacks, but later reported that his therapist thought it might be good for him to go to. He subsequently reported that he had been considering alternatives to returning to work in management, and was working on his hobby of blacksmithing and making knives. In August 2016, the claimant reported that he was doing more outside the house and was looking for work.

AR 22-23 (internal citations omitted).

To support this finding from the ALJ, Defendant relied upon the Ninth Circuit's case law regarding unemployment benefits and disability claims. Dkt. 11, pp. 11-12. An ALJ may reject a claimant's testimony if the evidence establishes the claimant, in order to receive unemployment benefits, considered himself capable of work and held himself out as available

for work. *See Copeland v. Bowen,* 861 F.2d 536, 542 (9th Cir. 1988). However, an ALJ may not reject a claimant's testimony based upon the receipt of unemployment benefits where the record "does not establish whether [the claimant] held himself out as available for full-time or part-time work," as "[o]nly the former is inconsistent with . . . disability allegations." *See Carmickle*, 533 F.3d at 1161-62; *see also Mulanax v. Comm'r of Soc. Sec. Admin.,* 293 Fed. Appx. 522, 523 (9th Cir. 2008).

Here, Defendant does not cite – nor does the Court find – any case applying this reasoning outside of the unemployment benefits context. *See id.* But even assuming such case law could apply outside of this context, the ALJ's findings are unsupported by substantial evidence in the record. Most notably, the records the ALJ cited about Plaintiff's statements do not indicate whether Plaintiff held himself out as capable of performing full-time or part-time work. *See* AR 22-23 (citing AR 386, 399, 409-10). Rather, the records the ALJ cited reflect that while Plaintiff periodically reported he was interested in working, his statements were brief and did not establish whether he was interested in part-time or full-time work. *See* AR 386 ("[Plaintiff] is looking for work"); AR 399 ("[Plaintiff] shared that he has been considering alternatives to returning to work in management"); AR 409 ("[Plaintiff] shared that he [sic] gradually looking at moving back into the workforce if he can find something with low stress"), AR 409-10 (Plaintiff stating his therapist said it "might be good" for him to work, although he was "in a contemplative age but not sure if he is motivated to look for work . . . he thinks he would like to give it a try").

Further, in the August 2016 psychotherapy record the ALJ cited, Plaintiff did – as the ALJ found – state he was "looking for work." AR 386. Yet the ALJ failed to consider that Plaintiff stated earlier in that same therapy session that he could "likely work part time[.]" AR

385. Thus, the Court finds the evidence in the record does not rise to a clear and convincing

reason on which the ALJ could reject Plaintiff's testimony. *See Carmickle*, 533 F.3d at 1161-62

(where the record "does not establish whether [the claimant] held himself out as available for

full-time or part-time work," such a "basis for the ALJ's credibility finding is not supported by

substantial evidence," as "[o]nly the former is inconsistent with his disability allegations");

*Rodriguez v. Berryhill*, 2017 WL 3575534, at *6 (W.D. Wash. Aug. 18, 2017) (finding

insufficient evidence to reject plaintiff's testimony on her receipt of unemployment benefits

because the record did not establish she held herself out for full-time work, but only that she

would accept "suitable" work); *Hamadi v. Colvin*, 2017 WL 1381813, at *6 (W.D. Wash. April

18, 2017) (holding the ALJ could not reject plaintiff's testimony where "the ALJ failed to cite

any affirmative evidence in the record showing plaintiff certified, or otherwise indicated that she

was actually able to work full-time. . . . In fact, the record is devoid of any evidence" indicating

plaintiff "in fact held herself out as being able to work full-time").

  Third, the ALJ discounted Plaintiff's subjective symptom testimony because he found

Plaintiff's testimony not supported by the objective medical evidence. *See AR 19-22*. A

claimant's pain testimony cannot be rejected "solely because the degree of pain alleged is not

supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir.

1995) (quoting *Bunnell v. Sullivan*, 947 F.3d 341, 346-47) (9th Cir. 1991) (en banc)). This is true

for a claimant's other subjective complaints, as well. *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th

Cir. 1995) (holding that, although *Bunnell* was couched in terms of subjective complaints of

pain, its reasoning extends to non-pain complaints). Because this is the only remaining reason for

discounting Plaintiff's testimony, this is not sufficient to discount Plaintiff's testimony.

Because the ALJ erred in his assessment of Plaintiff's subjective symptom testimony, the Court must determine whether this error was harmless. Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111)).

In this case, had the ALJ properly considered Plaintiff's testimony, the RFC and hypothetical questions posed to the vocational expert ("VE") may have contained additional limitations. For example, the RFC and hypothetical questions may have included social limitations, given Plaintiff's testimony about irritability and stress when he engages with others. The RFC and hypothetical questions may have also contained limitations accounting for the morning "mental fog" and headaches Plaintiff reported. The RFC and hypothetical questions did not contain these limitations. *See* AR 19, 59-67. Because the ultimate disability determination may have changed with proper consideration of Plaintiff's testimony, the ALJ's error is not harmless and requires reversal.

**V.      Whether the ALJ provided germane reasons for rejecting the lay witness testimony.**

Plaintiff asserts the ALJ failed to provide any germane reason to reject lay witness testimony from Plaintiff's wife. Dkt. 8, pp. 15-18.

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account." *Lewis*, 236 F.3d at 511. As such, lay witness testimony "cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted). To reject lay witness testimony, the ALJ must "expressly" disregard such testimony and provide "reasons germane to each witness for doing so." *Lewis*, 236 F.3d at 511. In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even if the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512.

On October 17, 2016 Plaintiff's wife submitted a third-party function report on his behalf. AR 281-96. In pertinent part, Plaintiff's wife reported Plaintiff was unable to work because his medications make him "sleepy, dizzy, nauseous," and sometimes cause diarrhea. AR 281. Plaintiff's wife wrote Plaintiff does not "get enough sleep on a regular basis." AR 282. Plaintiff gets confused, has difficulty focusing, and cannot follow directions. AR 289. Plaintiff's wife determined Plaintiff needs reminders to change into clean clothes, bathe, care for himself, shave, and feed himself. AR 282. Further, Plaintiff's wife stated Plaintiff cannot go out alone because he gets panic attacks, suffers from anxiety, and sometimes forgets what he is supposed to do. AR 284. In addition, Plaintiff's wife reported Plaintiff does not pay bills because he does not pay on time and cannot handle savings account or other finances. AR 284.

Regarding Plaintiff's hobbies and interests, Plaintiff's wife wrote he used to do house projects, karate, go scuba diving, and play board games. AR 285. However, Plaintiff no longer engages in these activities because he does not "have the energy" and does not "want to be in a crowd. . . . He mostly want [sic] to be quiet and avoid talking to people." AR 285; *see also* AR 291 (noting Plaintiff does not "want to be in a crowd," cannot "handle loud noises," and suffers

from mood swings and irritability). Plaintiff's wife also wrote Plaintiff may talk on the phone, meet with friends, or go to church once or twice a month. AR 285.

Plaintiff's wife determined Plaintiff has limitations in his ability to lift, squat, stand, reach, walk, sit, kneel, talk, and climb stairs. AR 286, 293-94. Moreover, Plaintiff's wife reported limitations in his memory and ability to complete tasks, concentrate, understand, follow instructions, and get along with others. AR 286, 293-94. She wrote Plaintiff can walk for 30 minutes before needing to stop and rest, and needs to rest for 2-3 hours before walking again. AR 286. Additionally, Plaintiff does not follow spoken instructions well, and cannot handle being "boss[ed]" around "too much." AR 286. Plaintiff's wife reported Plaintiff got fired from a position in 2007 due to problems getting along with others. AR 286. Plaintiff does not handle changes in routine well because he gets "easily" confused. AR 287. Plaintiff's wife wrote Plaintiff "easily get [sic] furious" at "simple things." AR 287. Furthermore, she reported several side-effects caused by Plaintiff's medications, including dizziness, drowsiness, and nausea. AR 287-88.

The ALJ summarized the testimony from Plaintiff's wife, and then stated:

> The residual functional capacity assessment set forth above for light work with a sit/stand opinion in a low-stress environment and a limitation to simple, routine, repetitive tasks adequately accounts for many of [Plaintiff's wife's] observations and concerns. However, her statement is not entirely persuasive or given great weight because **(1)** it is not consistent with the medical evidence that documents improvement with treatment and generally unremarkable mental status and physical examination findings. **(2)** Moreover, the claimant's wide range of activities, including assisting in homeschooling, teaching karate, performing blacksmithing, and looking for work are not consistent with the extent of the symptoms and limitations noted by [Plaintiff's wife].

AR 24 (numbering added).

The ALJ provided two reasons for finding the testimony from Plaintiff's wife unpersuasive. First, the ALJ determined Plaintiff's wife's testimony was "not consistent" with

the medical evidence indicating improvement with treatment and generally unremarkable

examinations. AR 24. Generally, an ALJ may discredit lay testimony if it conflicts with the

medical evidence. *Lewis*, 236 F.3d at 511 (citation omitted). Nevertheless, an ALJ errs when he

rejects an opinion while "criticizing it with boilerplate language that fails to offer a substantive

basis for his conclusion." *Garrison*, 759 F.3d at 1012-13 (citing *Nguyen*, 100 F.3d at 1464). In

other words, "[t]he ALJ must provide an explanation for his determination." *McCann v. Colvin*,

111 F.Supp.3d 1166, 1175 (W.D. Wash. 2015) (citing *Nguyen*, 100 F.3d at 1467).

 In this case, the ALJ determined that the testimony from Plaintiff's wife was inconsistent

with the medical evidence showing improvement with treatment and the "generally

unremarkable" examinations in the record. AR 24. Nonetheless, the ALJ failed to provide any

reasoning regarding how Plaintiff's alleged improvement and examinations undermined

Plaintiff's wife's testimony. As the ALJ failed to provide any explanation to support this finding,

the Court cannot determine this was a germane reason, supported by substantial evidence, for

rejecting this testimony. *See Popa v. Berryhill*, 872 F.3d 901, 908 (ALJ did not properly reject lay

testimony where he found the lay testimony "conflicted with other medical evidence in the

record" but "provided little illumination of this alleged contrast"); *Gilbert v. Colvin*, 2015 WL

4039338, at *5 (W.D. Wash. July 2, 2015) (ALJ did not provide a sufficiently specific reason to

discredit lay testimony where he did not give "any idea as to what in the medical evidence was

inconsistent" with the testimony).

 Second, the ALJ found Plaintiff's activities were inconsistent with the testimony from

Plaintiff's wife. AR 24. An ALJ may properly discount lay witness testimony if the claimant's

activities are inconsistent with the witness's opinion. *See Carmickle*, 533 F.3d at 1164. Yet here,

the ALJ again failed to provide any reasoning as to how the listed activities contradict the

testimony from Plaintiff's wife.[8] *See* AR 24. Given the ALJ's lack of explanation, the Court cannot determine the cited activities are, as the ALJ claimed, inconsistent with "the extent of the symptoms and limitations" described by Plaintiff's wife. *See* AR 24. Thus, this was not a germane reason, supported by substantial evidence, to support his assertion. *See Popa*, 872 F.3d at 908 (ALJ did not provide germane reasons for discounting lay testimony when he failed to explain how the claimant's daily activities contradicted the lay testimony); *McCann*, 111 F.Supp.3d at 1175 (ALJ failed to provide specific, germane reasons for discounting a lay opinion when the ALJ provided no explanation as to how the opinion was inconsistent with the overall medical record, the claimant's daily activities, and his work history).

For the above stated reasons, the Court concludes the ALJ failed to provide germane reasons supported by substantial evidence for discounting the testimony from Plaintiff's wife. Therefore, the ALJ erred. Had the ALJ properly considered this testimony, the RFC and the hypothetical questions posed to the VE may have included additional limitations. As the ultimate disability decision may have changed, the ALJ's error is not harmless. *See Molina*, 674 F.3d at 1115.

On remand, if the ALJ intends to find Plaintiff's wife's testimony as inconsistent with the medical evidence or Plaintiff's activities, the ALJ is directed to explain how these aspects of the record contradict her testimony.

---

[8] Furthermore, the ALJ's finding that Plaintiff teaching karate contradicted the testimony from Plaintiff's wife is unsupported by the record, as she reported – and he testified – he no longer does karate. *See* AR 50, 285.

**VI.    Whether the ALJ accurately assessed the RFC and met his burden at Step Five of the sequential evaluation process.**

Lastly, Plaintiff maintains the ALJ's RFC assessment was legally erroneous, and as such, the ALJ failed to meet his burden at Step Five of the sequential evaluation process. Dkt. 8, pp. 18-19.

The ALJ committed harmful error by failing to properly consider Plaintiff's subjective symptom testimony and the lay witness testimony. *See* Sections IV. and V., *supra*. Accordingly, the ALJ must reassess Plaintiff's RFC on remand. *See* SSR 96-8p, 1996 WL 374184 (1996) (an RFC "must always consider and address medical source opinions"); *Valentine*, 574 F.3d at 690 ("an RFC that fails to take into account a claimant's limitations is defective"). As the ALJ must reassess Plaintiff's RFC on remand, the ALJ is also directed to re-evaluate Step Five to determine whether there are jobs existing in significant numbers in the national economy Plaintiff can perform in light of the RFC. *See Watson v. Astrue*, 2010 WL 4269545, at *5 (C.D. Cal. Oct. 22, 2010) (finding the RFC and hypothetical questions posed to the VE defective when the ALJ did not properly consider two doctors' findings).

<u>CONCLUSION</u>

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein. The Clerk is directed to enter judgment for Plaintiff and close the case.

Dated this 13th day of November, 2018.

David W. Christel
United States Magistrate Judge